

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*United States Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

July 16, 2021

**BY ECF**

The Honorable Nelson S. Roman
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

    Re:    *United States* v. *Torren Stubbs*, 19 Cr. 276 (NSR)

Dear Judge Roman:

    The Government respectfully submits this letter in advance of the sentencing in this matter, for defendant Torren Stubbs for charges of Hobbs Act robbery conspiracy and Hobbs Act robbery, and in response to the letters Stubbs filed on July 7, 2021 and July 12, 2021 (the "July 7 Letter" and the "July 12 Letter," respectively).[1]

    On August 13, 2015 in Newburgh, New York, Torren Stubbs agreed with Andre Little and another man to set up a robbery of a card game Little was playing in. Stubbs and the other man selected the robbers to commit the actual robbery, including dangerous gang member Skylar Davis. Stubbs met with the robbers beforehand. The robbery went awry, and shots rang out, striking the card players and killing one of the players, Stubbs' uncle Samuel. Torren Stubbs had opportunity after opportunity to accept his role in the robbery and assist the Government in its investigation of the murder. In 2018, Stubbs was willing to inculpate Davis and the other robbers, ▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, but he falsely claimed that he was not involved in the robbery. Those lies contributed to a material delay in the Government's investigation of the robbery, so that Stubbs could try to evade the consequences of his own actions.

    Stubbs may not have intended for his uncle to be murdered, but his actions directly contributed to that terrible crime, and his later lies delayed justice against himself and other conspirators. The only appropriate sentence that would reflect the seriousness of the crimes, promote respect for the law, and afford adequate deterrence, is a sentence within the Guidelines and greater than that of Andre Little, namely a sentence of between 84 to 96 months' imprisonment, to run consecutive to the 30 months' sentence imposed by Judge Rakoff for the defendant's conviction for participating in a narcotics conspiracy.

---

[1] As described in the Government's email, the Government is filing this submission in redacted form.

The Honorable Nelson S. Roman
July 16, 2021
Page 2 of 10

### A. Instant Offense Conduct

In the early morning on August 13, 2015, Andre Little, Samuel Stubbs and another man, Victim-1, were playing cards for money on the streets of Newburgh, at the intersection of South Lander and Courtney Streets. (Presentence Investigation Report ("PSR") ¶ 17). Little was losing money to the other men, and wanted to retrieve it. (*Id.*). Little slipped away from the card game, and contacted his acquaintances, the defendant Torren Stubbs and another co-conspirator ("CC-1"), to arrange for the defendant and CC-1 to rob the card game. (*Id.*). The defendant knew that Victim-1 was a drug dealer, that his narcotics proceeds were included in the winnings of the game, and those proceeds (intermingled with money from Samuel Stubbs) was an aim of the robbery. (*Id.*). After meeting with the defendant and CC-1, Little returned to the game. (*Id.*).

The defendant and CC-1 contacted members of the notorious Newburgh street gang Southside, including Skylar Davis and another conspirator ("CC-2"), to come rob the game. (*Id.*). The defendant met with Davis and CC-2. The defendant had previously seen both Davis and CC-2 carrying firearms, but at his meetings with Davis and CC-2, the defendant was not informed that either would be carrying firearms to rob the game. The defendant was further informed that the participants in the card game were not themselves believed to be carrying firearms. CC-1, Davis, and CC-2 then drove to the card game, where Davis and CC-2 went to rob the game. The defendant was in the vicinity of the game, and observed Davis and CC-2 begin to approach the card game and put on masks; he did not observe the two carrying firearms. Davis and CC-2 opened fire when they faced resistance. The defendant heard the gunshots and then observed the two coming back from the card game, both carrying firearms. Samuel Stubbs, Victim-1, and Little were struck by gunshots; Samuel Stubbs, the defendant's uncle, died of his injuries.

The FBI and City of Newburgh Police Department investigated the murder of Samuel Stubbs for years. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In June 2017, an indictment was unsealed, charging Davis and others with racketeering conspiracy and other crimes; Davis was transferred to federal custody. *United States v. Davis*, 17 Cr. 364 (CS). ▮▮▮▮▮▮▮▮▮▮ The defendant elided any description of his own role in the robbery and murder, incriminating only CC-1, Davis, and CC-2. Based on ▮▮▮▮▮▮▮▮▮▮ the grand jury filed a superseding indictment, charging Davis with murdering Samuel Stubbs.

A few weeks later, the defendant was intercepted on a Title III wiretap buying re-distribution quantities of cocaine from Edwin Guerrier, a large-scale cocaine trafficker located in Newburgh. The defendant frequently purchased cocaine from Guerrier which he then resold to other customers, and was thus well aware that Guerrier was the fulcrum of a large-scale narcotics operation. Guerrier was arrested in March 2018 and charged with narcotics conspiracy on a

The Honorable Nelson S. Roman
July 16, 2021
Page 3 of 10

complaint, and was indicted, along with six other conspirators, in April 2018. *United States v. Edwin Guerrier*, 18 Cr. 284.



Based on the ▮▮▮ he Government sought and obtained a Superseding Indictment, charging the defendant along with Guerrier with narcotics conspiracy charges in November 2018. 18 Cr. 284 (JSR), Dkt. No. 41.

### B. Procedural History

In April 2019, the instant indictment was unsealed, and the defendant was arrested again, with his bail continued since the instant charges predate those in the *Guerrier* indictment. The defendant ultimately pleaded guilty to those narcotics charges, and was sentenced by Judge Rakoff. The Government requested that Judge Rakoff not consider the conduct underlying the instant charges in imposing sentence. 18 Cr. 284 (JSR), Dkt. No. 132, p. 2 n.1. Judge Rakoff imposed a sentence of 30 months', which the defendant began serving on or about March 16, 2020. 18 Cr. 284 (JSR), Dkt. No. 153.

On April 15, 2021, the defendant appeared before Your Honor and entered a guilty plea to the two counts of the indictment, pursuant to a *Pimentel* letter.

### C. Presentence Investigation Report

The Probation Office has calculated the offense level as 24 as follows, and as consistent with the *Pimentel* letter: the two counts group, pursuant to U.S.S.G. § 3D1.1; for the two counts, a base offense level of 20, pursuant to U.S.S.G. § 2B3.1(a); five levels are added because a firearm was brandished or possessed, pursuant to U.S.S.G. § 2B3.1(b)(2)(C); two levels are added because the defendant attempted to obstruct or impede the administration of justice, pursuant to U.S.S.G. § 3C1.1; and three levels are removed for acceptance of responsibility. (PSR ¶¶ 26–37).

Probation also calculates that Stubbs has 8 criminal history points, based on convictions for narcotics in 2011 and 2014, assault in 2012, the federal drug charges in 2018, and two additional points for committing the crimes in the indictment while on probation for the 2014 conviction. (PSR ¶¶ 39–47).

The Honorable Nelson S. Roman
July 16, 2021
Page 4 of 10

This offense level and criminal history category result in a Guidelines range of 77 to 96 months' imprisonment. (PSR ¶ 89.) The Government agrees with the Probation Office's calculation.

The Probation Office has recommended that the Court sentence the defendant to 77 months' imprisonment on each of Count One and Count Two, to run concurrent to each other. (PSR p. 25.)

**D. The Court Should Sentence Stubbs to Between 84 and 96 Months' Imprisonment**

The Guidelines are no longer mandatory, but they still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines range is thus "the lodestar" that "'anchor[s]'" the district court's discretion. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345-46 (2016) (quoting *Peugh v. United States*, 133 S. Ct. 2072, 2087 (2013)).

After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing outlined in 18 U.S.C. § 3553(a)(2). To the extent a district court imposes a sentence outside the range recommended by the Guidelines, it must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *United States* v. *Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *Gall*, 552 U.S. at 50).

**1. Guidelines Disputes**

In a letter to the Court dated July 7, 2021, the defendant objected to the firearms enhancement, U.S.S.G. § 2B3.1(b)(2)(C), and also requests that the Court reduce his sentence by two points because he was a minor participant in the crime, U.S.S.G. § 3B3.2(b). The Court should reject the defendant's positions.

*a. Firearms Enhancement*

The Court should impose the firearms enhancement. Under the Sentencing Guidelines, the "specific offense characteristics" for a "jointly undertaken criminal activity" include:

all acts and omissions of others that were—

    (i)    within the scope of the jointly undertaken criminal activity,
    (ii)   in furtherance of that criminal activity, and
    (iii)  reasonably foreseeable in connection with that criminal activity;

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a)(1)(B). The Second Circuit has suggested that members of robbery conspiracies, particularly high-stakes robberies where the victims will otherwise be unlikely to turn over the targeted property, inherently can foresee possession of firearms by their conspirators, because "it is hard to imagine that [defendant's] plan called for the ski-masked co-conspirators to burst into the construction company's offices and shout, 'Give me your money or . . . I will think ill of you!'" *United States v. Medina*, 74 F.3d 413, 417 (2d Cir. 1996); *see also United States v. Cerome*, 277 F. App'x 85, 87 (2d Cir. 2008) ("the District Court did not clearly err in finding that the brandishing of a firearm was reasonably foreseeable to [defendant] in light of his involvement in the planning and execution of the robbery of an employee of a money transfer business in broad daylight on a city street as he approached a bank to deposit funds."). Other sister Circuits have held the same. *United States v. Jordan*, 945 F.3d 245, 264 (5th Cir. 2019) ("the nature of credit union robbery and Wise's complicity in that robbery alone may be sufficient to support the district court's finding"); *United States v. Montes-Fosse*, 824 F.3d 168, 171 (1st Cir. 2016) ("Accordingly, we have determined that the use of a gun is reasonably foreseeable in the context of bank robberies and certain drug offenses") (citations omitted).

The brandishing and possession of firearms by Davis and CC-2 was within the scope of the defendant's jointly undertaken criminal activity, was in furtherance of that activity, and was reasonably foreseeable to the defendant. Unlike his co-defendant Andre Little, the defendant knew the identities of the individuals who would actually perform the robbery, knew that they were two gang members who he had previously observed carrying firearms, and that they intended to rob a card game involving drug dealers late at night in Newburgh. Presumably, the players would not have simply given over the money because the conspirators asked nicely. The relative heights of the victims and perpetrators further supports this conclusion: Skylar Davis is 5'2", CC-1 approximately 5'7", CC-2 approximately 5'10"; whereas Andre Little, at the least, is 6'4". Had Davis and the other conspirators simply demanded the money, presumably the other players would have looked to Little to protect them against the comparatively diminutive robbers. It was also reasonably foreseeable for Stubbs to conclude that Davis and CC-2 would carry firearms given that some of the card player victims were drug dealers. *Cf. United States v. Becerra*, 97 F.3d 669, 671 (2d Cir. 1996) ("drug dealers commonly keep firearms on their premises as tools of the trade.").[2]

    b. *Minor Participant*

In his July 7 Letter, the defendant also asserted that the Court should grant him a two-point minor role adjustment, pursuant to U.S.S.G. § 3B1.2. The defendant "bears the burden of

---

[2] This conclusion is not disturbed by the fact that the defendant was informed that the card players were not believed to be carrying guns themselves. Even without such possession by the victims, given the late night and the participants, there is no basis to believe that the victims would simply hand over the money without the threat of violence by Davis and CC-2.

The Honorable Nelson S. Roman
July 16, 2021
Page 6 of 10

establishing by a preponderance of the evidence" such a mitigating enhancement. *See United States v. Castaño*, 234 F.3d 111, 113 (2d Cir. 2000). The defendant asserts that he is entitled to such an enhancement because while "he conspired with the others to commit the robbery," he was "not actually at the scene of the robbery."

The Court should reject this assertion. The undisputed facts of the PSR makes clear that the defendant was integrally involved in the planning of the robbery. The defendant had been contacted by Andre Little to commit the robbery; the defendant and CC-1 had discretion about who to contact to carry out the robbery. Along with CC-1, the defendant arranged for Davis and CC-2 to commit the robbery; he could have chosen other participants, or done it himself. Instead, he selected well-known, violent gang members, who he previously had seen with firearms. While there was little discussion between any of the conspirators about how the proceeds of the robbery would be shared, the Government submits that the defendant must have assumed he would receive some of the proceeds.

These factors all weigh in favor of denying a role adjustment. The defendant "understood the scope and structure of the criminal activity," since he helped arrange for the actual robbers to participate, U.S.S.G. § 3B1.2, Application Note 3(C)(i); he "participated in planning or organizing the criminal activity," through his meetings with and arrangements with CC-1, Davis, and CC-2, *id.* Application Note 3(C)(ii); he helped choose who would commit the robbery, *id.* Application Note 3(C)(iii); he had "responsibility and discretion" in such a choice, *id.* Application Note 3(C)(iv); and assumed or should have assumed he would receive a cut of the robbery proceeds. *Id.* Application Note 3(C)(v).

   2. **Proper Sentence**

In this case, and regardless of the Court's holdings as a matter of law with respect to the disputed Guidelines issues, the Government respectfully submits that consideration of the Section 3553(a) factors weigh in favor of a sentence within the Guidelines, greater than that of Andre Little, between 84 and 96 months, to run consecutively to the sentence imposed by Judge Rakoff in 18 Cr. 284.[3] In particular, the nature and circumstances of the offense, promoting respect for the law, and affording adequate deterrence, all militate in favor of such a sentence.[4]

---

[3] The Government agrees with defense counsel and Probation that the sentence as to Counts One and Two should run concurrently with each other.

[4] To the extent the Court agrees with the defendant's legal Guidelines arguments, the Government respectfully requests that the Court impose such a sentence in the Court's discretion under the Section 3553(a) factors. Specifically, as counseled by the Second Circuit, the Court can make clear that its sentencing decision is "not driven by the guidelines" and "was appropriate irrespective of the Guidelines range," for the reasons stated herein. *United States v. Lopez*, 768 F. App'x 19, 21 (2d Cir. 2019).

The Honorable Nelson S. Roman
July 16, 2021
Page 7 of 10

*Seriousness of the Offense*

Torren Stubbs knew who was playing cards. He knew his uncle was present. He knew the perpetrators of the robbery would be dangerous and violent gang members like Skylar Davis. He could reasonably foresee that the robbers would carry a firearm and make threats. Sometimes threats and firearms lead to violence. The defendant may not have known or intended that Davis or CC-2 would open fire, and the Government is not holding him responsible for murder. But arranging a robbery of drug dealers has consequences, and in this case, those consequences were deadly for the defendant's own uncle.

Samuel Stubbs was not a drug dealer, a gang member, or involved in Newburgh's ongoing gang violence. He was simply an innocent civilian who happened to be winning at cards in the early morning of August 13, 2015, and who unluckily found himself the target of an armed robbery, arranged in part by his own nephew. The Government expects that at sentencing, Samuel Stubbs' fiancée will appear in Court or via telephone to show respect and support for Samuel Stubbs, as she did at sentencings of Skylar Davis and Andre Little.

The defendant's course of conduct after the robbery compounds its seriousness. Instead of accepting responsibility for the terrible crime, the defendant tried to pass guilt onto others through deceit and lies. And he did not do so because of fear of retribution. The defendant has been happy to inculpate Davis, CC-1, and CC-2 for years ███████████████████████████████████████ He instead lied to save his own skin, from criminal liability and perhaps familial embarrassment. Those lies had real consequences: he delayed the Government in charging him and Little for their role; and could have caused serious problems for the Government's presentation of evidence ███████████████████

Newburgh is a small city, about 30,000 people, which has unfortunately been racked by drug dealing and violence for many years. Many witnesses in the city are too afraid to report crimes to law enforcement. Torren Stubbs' participation in the robbery, and his subsequent mockery of the system through false testimony, directly contributed to making his city less safe for law-abiding citizens, ███████████████ These are incredibly serious offenses, which should be punished accordingly. The severity of his falsehoods distinguish his case, negatively, from that of Andre Little, and weigh in favor of a sentence lengthier than that imposed on Little.

*Promote Respect for the Law and Specific and General Deterrence*

A sentence of between 84 to 96 months is further needed to promote respect for the law, and specifically deter this defendant from committing additional crimes when he is eventually released. In his early twenties, Torren Stubbs was convicted in quick succession of three misdemeanors: for drugs, harassment, and assault. On each occasion he received light sentences, reflecting the criminal conduct. But his actions only got worse: when he appeared before the state court in Orange County in 2014 after having been convicted for possessing an eighth of an ounce

(about 4 grams) of cocaine, that court could have sentenced him to a meaningful period of incarceration. New York Penal Law 220.16 (Criminal Possession of a Controlled Substance in the Third Degree is a Class B felony). Instead, the judge gave Stubbs leniency, sentencing him to five years' probation. But Stubbs did not take advantage of that leniency. While on Probation, he committed the instant offense. Committing this crime while on probation, after receiving leniency for previously illegally possessing a resale quantity of cocaine, evidences tremendous disrespect for the law. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ This Court should punish Stubbs appropriately, and help ensure that he understands the consequences of his actions to deter him from re-offending.

General deterrence is another important consideration in this case. The defendant's robbery was an important contributor to increases in violent activity in a city plagued by violence. And his lies thereafter made it more difficult to solve that crime. Imposing a lengthy sentence on the defendant would send a strong message to the community that violent crime and obstructive conduct in Newburgh will result not only in serious federal charges, but also significant consequences. It would also make clear that the plight of the majority of Newburgh's citizens – those like Samuel Stubbs who are law-abiding and non-violent – is taken seriously by the criminal justice system.

*The Defendant's Sentence Should Run Consecutive to That Imposed by Judge Rakoff*

Though the defendant does not mention it, the Court must determine how the sentence on the instant offense should interact with the 30 months' previously imposed by Judge Rakoff, of which the defendant has approximately 9 months left to serve, assuming good behavior. Because the defendant's 2018 narcotics trafficking was entirely unrelated to the instant offense, the appropriate Guideline provision is U.S.S.G. § 5G1.3(d). The Government respectfully submits that in order to "achieve a reasonable punishment for the instant offense," the Court should impose sentence on the instant offense to run consecutive to those 9 months. The Government urged Judge Rakoff to ignore the instant offense in imposing sentence, and to impose a sentence solely based on the drug conduct. From all appearances, Judge Rakoff did so. The Court, then, should do the same, imposing a sentence fully independent and thus consecutive to that which Judge Rakoff imposed.

The Honorable Nelson S. Roman
July 16, 2021
Page 9 of 10

*Defendant's Submission*

Stubbs requests leniency on a number of grounds. Two are wholly specious. The defendant asserts that "[a]lmost immediately after the agreement to commit this crime he realized the error of his ways." July 12 Letter at 2. That is of course untrue: not only did the defendant continue to commit additional crimes, ███████████████████████████████ ███████████████████████████ The defendant also asserts his interest in not "let[ting] his family down," July 12 Letter at 3, ignoring that his selfish conduct led directly to the murder of one of his own family members.

The defendant also argues for leniency based on his childhood and substance abuse. July 12 Letter at 5–7. The PSR and the defendant's letter describe his difficult childhood, including growing up in a violent neighborhood. But these factors simply do not excuse or mitigate his conduct in the instant case, arranging a violent robbery of a card game.

The defendant requests a leniency sentence based on his particularly difficult conditions of confinement pre-trial, including the COVID-19 pandemic and attacks on his safety while incarcerated. July 12 Letter at 7–10. The Government agrees the conditions of defendant's incarceration have been more difficult than those of a defendant before the pandemic; however, if credited, it would militate in favor of more lenient sentences for *any* defendant detained or incarcerated since the onset of COVID-19. Courts throughout this district have generally rejected such reasoning (albeit usually in the context of motions for compassionate release). *See, e.g., United States v. Bryant*, No. 06-CR-17-LTS, 2021 WL 738838, at *3 (S.D.N.Y. Feb. 24, 2021) (conditions of confinement during COVID "are not unique to [the defendant] and do not militate strongly in favor of finding there are extraordinary and compelling reasons for a sentence reduction."). Indeed, the defendant requested that Judge Rakoff modify his pre-existing sentence based on the pandemic conditions. Judge Rakoff denied that motion, 18 Cr. 284, Dkt. No. 234, given the defendant's age and relatively healthy physical condition.

As he did before Judge Rakoff, the defendant writes at length describing why the Court "should consider 'specific deterrence' to a greater degree than 'general deterrence.'" July 12 Letter at 10–12. Once again, the Government agrees, but submits that specific deterrence is an aggravating factor. One need not review the latest scientific and criminological research about deterrence to determine how Torren Stubbs himself treats lenient sentences. After his conviction in the state in 2014, he did not comply with his probation officer, and stay on the straight and narrow. Instead, he committed the instant offense, not learning any lesson from his prior crimes, and as Probation describes, "he poses a risk of reoffending in the future." PSR p. 26. Only a substantial incarceratory sentence, namely between 84 and 96 months, will demonstrate to Stubbs the consequences of his participation in illegal activity like the instant offense, and reduce the likelihood that he will return to criminal activity.

No sentence this Court could impose will bring Samuel Stubbs back. An appropriate sentence would balance the Section 3553(a) factors to reflect the defendant's terrible crime, setting up a robbery that led to his own uncle's murder, and the defendant's continued lies and obstruction

The Honorable Nelson S. Roman
July 16, 2021
Page 10 of 10

to evade criminal responsibility.  That sentence, sufficient but not greater than necessary, is one lengthier than that imposed on Andre Little, within a range of 84 to 96 months.

                                    Respectfully submitted,

                                    AUDREY STRAUSS
                                    United States Attorney

By:    /s/
                                    Samuel Raymond/Lindsey Keenan
                                    Assistant United States Attorneys
                                    (212) 637-6519

Cc:  Larry Sheehan, Esq.